KASPARI, Administratrix, etc., Respondent, vs. MARSH, Appellant.

*September 28 — October 15, 1889.*

*(1) Master and servant: Negligence causing death: Court and jury.*
*(2) Damages recoverable by widow for death of husband.*

1. In an action to recover damages for the death of the plaintiff's intestate, caused by the fall of a scaffold which he had built and upon which he was at work for the defendant, the evidence (showing that the scaffold was not safely constructed, the nails used being too small or too few, and that the defendant was a skilled carpenter and knew the deceased was not; and tending to show that the defendant gave specific instructions as to constructing the scaffold and aided in or supervised its construction) is *held* to warrant a finding that the defendant was negligent either in not fur-

nishing the proper nails or in causing the scaffold to be constructed in an unskilful and improper manner.

2. In an action by a widow, suing as administratrix, for damages for the death of her husband, it is not error to instruct the jury that, in assessing the damages, they are not limited to the simple value of her support and protection, "but may consider also what increase, if any, the earnings of her husband would have made to his property had he continued to live, and the reasonable expectation which she had of pecuniary advantage by ultimately receiving a share of such earnings as his heir or one of his heirs."

APPEAL from the Superior Court of *Milwaukee* County.

Action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The deceased, who was the plaintiff's husband, was killed by the fall of a scaffold upon which he was engaged in shingling the roof of a bay window upon a house owned by, and being built under the superintendence of, the defendant. Other facts will sufficiently appear from the opinion. The plaintiff had a verdict assessing her damages at $1,500; and from the judgment entered thereon the defendant appealed.

The cause was submitted for the appellant on the brief of *Austin, Runkel & Austin,* and for the respondent on that of *Fiebing & Killilea,* attorneys, and *F. L. Gilson,* of counsel.

COLE, C. J. The undisputed testimony in this case shows that the scaffold in question was defectively constructed and was unsafe for workmen to stand upon. Several carpenters testified to that effect, who examined the scaffold shortly after the accident by which Kaspari was killed. These witnesses agree in saying that the scaffold was not built right. It was not constructed in a safe and workmanlike manner. The principal defect in the structure was that the cross-pieces were not well fastened with nails; the nails used being eight-penny nails, instead of ten-penny nails as

they should have been, and not a sufficient number of the eights were used to make the scaffold strong and safe. The testimony is in harmony as to the fact that the scaffold was unsafe because an insufficient number or the wrong-sized nails were used in its construction.

The inquiry is, Was the evidence sufficient to justify the jury in finding that the defendant was responsible for this defect? There were facts proven bearing upon the question which warrant the jury in finding that he was. In the first place, it is to be observed the defendant was a carpenter by trade,— a contractor skilled in erecting buildings. Kaspari was a street-paver by occupation, and not skilled in carpenter's work. There is no dispute about these facts. The defendant knew, for he had employed Kaspari a great deal, and had every possible means of knowing, that he was not a carpenter and that building scaffolds was not his usual employment. He says: "I had known Kaspari for twenty-three or twenty-four years. He had worked for me at different times; had done paving in the streets for me, and had taken care of my horses; had worked upon lots of buildings for me, and once put up a scaffold between two houses, one of which leaked." And, while he says "Kaspari could do a little of everything," he knew he was not a carpenter and did not profess to be. The house upon which Kaspari was at work when the scaffold fell and he was killed belonged to the defendant. There is ample evidence to show that the defendant was about the house, working upon it and giving directions as to how the work should be done. Whether he gave Kaspari any specific directions about constructing the scaffold, or aided him in the construction of it, is a matter of dispute upon the evidence. The plaintiff, in effect, testified that the defendant was about the building all the time while her husband was working upon it, giving directions. She says she heard him caution her husband while working upon the scaf-

fold not to use too many nails, or that he. was using too many nails in putting it up.  Now, whether he gave this caution or not may be a doubtful question, but certain it is, had he given the scaffold any attention,— being a skilled carpenter, as he was conceded to be,— he would have discovered that it was not properly constructed.  He was skilled in these matters; Kaspari was not.  If the jury believed the testimony of the plaintiff, as they had a right to do, and were satisfied that the defendant was present when the scaffold was built, that he gave directions about its construction, and told Kaspari that two eight-penny nails would be sufficient to hold the work, there can be no doubt as to his responsibility for the defect.  It is said that Kaspari had had sufficient experience about buildings to understand what would be a reasonably safe structure to stand on. But he was not a carpenter by trade, and it does not appear that he had had much experience in building scaffolds.  He would naturally defer to the judgment and direction of his employer in the matter, who was a skilled carpenter and knew more about such work.  The defects in the structure might be obvious to a skilled carpenter, but not so to a man whose occupation was paving streets.

As to the defendant's liability if he supervised the construction of the scaffold, there can be no doubt.  This court has frequently affirmed the doctrine that it is the duty of the master to furnish the servant with reasonably suitable and safe means and appliances for doing the work which the servant is required to do, as well as a reasonably safe working place; and where the master has charge of the work himself he is guilty of negligence if defective appliances are furnished or the structure is built in an unsafe manner.  If the defendant did exercise a supervision over the erection of the scaffold, and gave directions in regard to its construction, he surely should be held liable for an

injury resulting from its falling because defectively built. That is the doctrine established by this court.

We do not pass upon the evidence further than to say there was enough to carry the case to the jury upon the question of the defendant's negligence. Upon this point the trial judge charged that, if the deceased, Kaspari, constructed the scaffold with or without the assistance of others, and had been employed about buildings sufficiently to know, or otherwise had obtained knowledge, of the method and manner of the construction of scaffolds, and built this one without any specific instructions from the defendant as to how it should be constructed, except perhaps the general instruction to build the scaffold, and the defendant had retained no supervision over its construction, and that materials sufficient were furnished or were at hand with which to build it, and the deceased afterwards went onto the scaffold, when it gave way and he fell to the ground and was killed, there could be no recovery. But if the testimony showed that the deceased, with or without the assistance of the defendant or others, constructed the scaffold, and that he had not been employed about buildings sufficiently to know, or had not otherwise sufficiently obtained knowledge, of the manner of constructing scaffolds, and built this under the supervision and direction of the defendant as to how it should be built, or that the defendant did not furnish suitable materials with which to construct the scaffold, and such scaffold was defectively constructed, in consequence whereof the deceased fell and was fatally injured, the defendant was liable. This charge submitted the case quite as favorably to the defendant as the law would allow, and the jury must have found that he was either negligent in not furnishing the proper nails, or by causing the scaffold to be constructed in an unskilful or improper manner. There was evidence which would war-

rant a finding for the plaintiff on either supposition; therefore the verdict cannot be disturbed.

This disposes of the errors assigned for refusing a nonsuit and denying the motion for a new trial. Also in refusing to direct a verdict for the defendant. The errors assigned for admitting and excluding certain evidence are so clearly untenable that they require no discussion. Some exceptions are taken to the charge. The charge is lengthy, and cannot be summarized. It is sufficient to say that it contains no error of which the defendant can complain. It does not hold him to a too strict rule of liability, considering that he was a skilful carpenter and the deceased was not. Even if he did not direct how the scaffold should be built, with proper care and attention he would have discovered the defects in its construction.

We perceive no error in the rule of damages as laid down by the learned trial court. It was substantially the rule approved by this court in *Castello v. Landwehr*, 28 Wis. 522, 532, and in the cases there referred to.

It follows from these views that the judgment of the superior court must be affirmed.

*By the Court.*— Judgment affirmed.