Argued 22 December, 1898; decided 13 February, 1899.

## BRUNELL v. SOUTHERN PACIFIC COMPANY.

[56 Pac. 129.]

INJURY TO EMPLOYEE—NEGLIGENCE OF FELLOW SERVANT.—Plaintiff was an experienced section hand, surfacing defendant's track about three-fourths of a mile from a station. He knew that bridge carpenters would run a hand car toward him from the station while he was at work. It was possible to see their approach the whole distance. No signal warned the men on the car of the men at work on the track, and while plaintiff's back was turned the car approached at the expected time; but he did not hear it, on account of the noise from their work. He and his fellow workmen sprang aside, and one carelessly dropped his tamping bar. The car struck it and threw it against plaintiff, breaking his leg. *Held*, that his injury was due to the negligence of his fellow servants, and to his own carelessness.

WHEN EMPLOYEES ARE FELLOW SERVANTS—The rule is now established in Oregon that in determining whether two persons were or were not fellow servants the character of the act causing the injury, and not the grade of the offending employee, is the test: *Mast* v. *Kern*, 34 Or. 247, cited.

DUTY OF RAILROAD TO EMPLOYEE.—A railroad company is not bound to keep a signal to warn workmen on a hand car of the situation of section men at work on the track.

From Multnomah:   E. D. SHATTUCK, Judge.

Action by Victor Brunell against the Southern Pacific Company.   From a judgment for plaintiff, defendant appeals.

REVERSED.

For appellant there was a brief over the name of *Bronaugh, McArthur, Fenton & Bronaugh*, with an oral argument by *Mr. William D. Fenton*.

For respondent there was a brief and an oral argument by *Mr. Dell Stuart*.

MR. JUSTICE MOORE delivered the opinion of the court.

This is an action to recover damages for an injury alleged to have been caused by defendant's negligence. The plaintiff, an experienced section hand, about twenty-two years old, was at the time of the accident employed with other laborers in surfacing the track on a spur of defendant's railroad leading from Sheridan easterly to Sheridan Junction, and while so engaged a hand car coming from Sheridan, propelled by bridge carpenters, suddenly came up behind plaintiff, who, with his fellow laborers, jumped from the track; but one of them, in his hurry to escape danger, dropped his tamping bar, which, being struck by the car, was thrown against plaintiff, breaking his leg.   It appears that a train left Sheridan each morning at 6 o'clock, and that no other

34 OR.—17.

train or engine could pass over the line during the day, unless it came from Sheridan Junction, in view of which the overseer in charge of the men with whom plaintiff worked placed a flag beside the track to the east of them, but none to the west. The injury occurred about three-fourths of a mile east of Sheridan, from which place the railroad is built in a straight line over an open, level prairie, and it was possible for plaintiff to have seen a moving hand car on the track anywhere between him and the station. True, plaintiff had been in defendant's employ only four days, but he knew that the men engaged in repairing bridges passed over the track on a hand car, leaving Sheridan each morning at about 7 o'clock, and returning in the evening. The negligence alleged as constituting the cause of action consists in defendant's failure to place a signal beside the track west of the place where plaintiff was working, or to set a person to watch the approach of hand cars coming from that direction. The answer, having denied the material allegations of the complaint, averred that the injury was caused by plaintiff's negligence and the carelessness of his fellow servants. The cause, being at issue, was tried, resulting in a judgment for plaintiff for the sum of $700, and defendant appeals.

It is contended by defendant's counsel that the evidence introduced at the trial, the substance of which is hereinbefore stated, fails to show any breach of his client's duty, and hence the court erred in denying his motion for a judgment of nonsuit; while plaintiff's counsel maintains that defendant was in duty bound to exercise reasonable care to select a safe place in which plaintiff should perform the service demanded of him, but having failed to set a signal, or to place a person to watch the approach of hand cars coming from the west, the place was rendered dangerous, in consequence of which the

defendant is liable for the injury which resulted from its negligence in this respect.

One of the rules of the common law is that the master must exercise reasonable care to provide a suitable place in which the servant can perform the labor demanded of him, without being exposed to dangers which do not of necessity attend the exercise of the employment, and that the master cannot delegate the performance of this duty to a subordinate, and thus escape the effect of the latter's negligence, but that the person so selected to provide a suitable place, though he may be a fellow servant of the person injured by his negligence, is *pro hac vice* a representative of the master: Buswell, Pers. Inj., § 192: McKinney, Fell. Serv., § 29; *Anderson* v. *Bennett*, 16 Or. 515 (19 Pac. 765); *Knahtla* v. *Oregon Short Line Ry. Co.*, 21 Or. 136 (27 Pac. 91); *Mast* v. *Kern*, 34 Or. 247 (54 Pac. 950); *Smith* v. *Peninsular Car Works*, 60 Mich. 501 (1 Am. St. Rep. 542, 27 N. W. 662); *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572 (3 Am. Rep. 506); *Sweat* v. *Boston, etc. R. R. Co.*, 156 Mass. 284 (31 N. E. 296); *Ryan* v. *Fowler*, 24 N. Y. 410 (82 Am. Dec. 315); *Filbert* v. *Delaware Canal Co.*, 121 N. Y. 207 (23 N. E. 1104); *Kaspari* v. *Marsh*, 74 Wis. 562 (43 N. W. 368).

This rule, as applied to a railroad company, requires it, in providing a safe place in which to perform the labor demanded of a servant, to exercise ordinary and reasonable care—having regard to the hazard of the service— to put its roadbed and tracks in a reasonably safe condition, and to exercise like care to keep them in repair and free from obstruction: *Colorado Central R. R. Co.* v. *Ogden*, 3 Colo. 499; *Atcheson, etc. R. R. Co.* v. *Myers*, 11 C. C. A. 439, 63 Fed. 793; *Louisville, etc. R. R. Co.* v. *Johnson*, 27 C. C. A. 367, 81 Fed. 679; *Bowen* v. *Chicago, etc. Ry. Co.*, 95 Mo. 268 (8 S. W. 230); *O'Donnell* v. *Alleghaney R. R. Co.*, 59 Pa. St. 239 (98 Am. Dec. 336);

*Calvo* v. *Charlotte R. R. Co.*, 23 S. C. 526 (55 Am. Rep. 28); *Torian's Administrator* v. *Richmond R. R. Co.*, 84 Va. 192 (4 S. E. 339); *Bessex* v. *Chicago, etc. Ry. Co.*, 45 Wis. 477.

To entitle a servant, however, to recover damages for an injury caused by the alleged negligence of the master in failing to exercise ordinary and reasonable care in putting or keeping in good condition the place in which the service is to be performed, the evidence must show that the master knew, or ought to have known, of the defect which rendered the place dangerous, and that the servant, notwithstanding he exercised ordinary and reasonable care to protect himself, was ignorant of the peril to which he was exposed : *Griffiths* v. *London Docks Co.*, 13 Q. B. Div. 259 ; *Thomas* v. *Quartermaine*, 18 Q. B. Div. 685 ; *Louisville R. R. Co.* v. *Campbell*, 97 Ala. 147 (12 South. 574); *Erskine* v. *Chino Beet-Sugar Co.*, 71 Fed. 270 ; *Richardson* v. *Cooper*, 88 Ill. 270 ; *Louisville, etc. Ry. Co.* v. *Corps*, 124 Ind. 427 (8 L. R. A. 636, 24 N. E. 1046); *Matchett* v. *Cincinnati, etc. Ry. Co.*, 132 Ind. 334 (31 N. E. 792); *New Kentucky Coal Co.* v. *Albani*, 12 Ind. App. 497 (40 N. E. 702); *Buzzell* v. *Laconia Mfg. Co.*, 48 Me. 113 (77 Am. Dec. 212); *Laning* v. *New York, etc. R. R. Co.*, 49 N. Y. 521 ; *Mixter* v. *Imperial Coal Co.*, 152 Pa. St. 395 (25 Atl. 587).

The following cases, cited and relied upon by plaintiff's counsel to sustain the judgment, illustrate the legal principle that the defect which rendered the place dangerous was open, and the master could have discovered it by the exercise of reasonable diligence, but the servant, relying upon the presumption that this duty had been fully discharged, was injured without knowledge of the peril to which he was negligently endangered : *Anderson* v. *Bennett*, 16 Or. 515 (19 Pac. 765); *Lewis* v. *Railroad Co.*, 59 Mo. 495 (21 Am. Rep. 385); *Hall* v. *Missouri Pac. Ry. Co.*,

74 Mo. 298; *Vautrain* v. *St. Louis, etc. Ry. Co.*, 8 Mo. App. 538; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 44 (85 Am. Dec. 720); *Moon's Administrator* v. *Richmond, etc. R. R. Co.*, 78 Va. 745 (49 Am. Rep. 401); *Hulehan* v. *Green Bay, etc. R. R. Co.*, 68 Wis. 520 (32 N. W. 529); *Davis* v. *Central Vermont R. R. Co.*, 55 Vt. 84 (45 Am. Rep. 590).

In the case at bar, however, the injury upon which the action is based was not caused by any defect in the place where the service was to be performed; but it primarily resulted from the negligence of the men who operated the hand car, combined with the carelessness of the man who dropped his tamping bar. This presents the question whether, in view of the fact that plaintiff and his fellow workmen were seen by the bridge carpenters in sufficient time to have avoided the injury, and considering that plaintiff knew that these employees would pass over the line that morning, there was a breach of the master's duty in failing to place a signal, or to adopt some other means to protect the men at work on the track against accidents which might be caused by the negligence of those who operated hand cars. Signal flags are used by the company to notify the persons in charge of its locomotives that the roadbed or track is in a dangerous condition, requiring them to stop their engines, or admonishing them to proceed with care; and, to accomplish the object for which these tokens are designed, prudence dictates that they should be placed at such a reasonable distance from the point of peril as to enable the engineer and those associated with him to get such control of its train as to be able to stop it or slacken its speed before reaching the defect which renders further progress dangerous. The chief purpose which these danger signals serve must necessarily be to protect the lives of those who operate, or are passengers on, the

train, which, by reason of its great weight and rapid movement, creates such momentum that it cannot be checked at once, so as to permit the persons who are riding thereon to safely leave it in time to escape injury. A hand car, however, is of little weight, and can ordinarily be stopped much more easily than a train ; hence it would seem, since the *quantum* of duty is always commensurate with the degree of danger, that the necessity for using signals to protect the lives of persons who ride on hand cars is not so urgent as in case of employees and passengers on a swiftly-moving train. It is the servant whose time and attention are so much occupied in the management of dangerous instrumentalities, as a means of advancing the master's business, that he cannot investigate for himself the condition of the place in which his service is performed, who is entitled to special notice of any defect therein that would tend to render it dangerous, but the rule can have no application to an employee of age and experience, who is not hurried in his work, or is as conscious of the danger to which he is exposed as the master can possibly be ; and, hence, the reason failing, the servant who works on the track is not entitled to the same degree of consideration as those who are compelled to perform their duties under greater difficulties.

Persons employed in repairing a railroad track can leave it at pleasure in most instances, but not so with a train which must hurriedly pass over the line at frequent intervals, to accommodate the public ; hence the duty of yielding the track must devolve upon the section men, who are required to watch the approach of trains : *Larson* v. *St. Paul, etc. Ry. Co.*, 43 Minn. 423 (45 N. W. 722). The necessity for vigilance on the part of the section man does not relieve the employees in charge of the train from all obligation to be watchful on his ac-

count; for, as was said by Mr. Justice Fly in *International, etc. R. R. Co.* v. *Arias* (Tex. Civ. App.), 30 S. W. 446: "There is a reciprocal duty existing between the railroad company and the employee at work on the track—the one being that the railroad company must give signals, where the nature of the locality requires, and, in case there is danger of injuring the employee, to use diligence to prevent it; and the other being that the employee must keep an outlook, and seek safety from trains that may be passing." The rule announced in that case, which seems reasonable, would require the engineer to blow his whistle at curves, cuts, and other dangerous places on the line, to notify persons working thereon of the approach of the train, and, in proportion to the degree of danger, it is quite probable that those who operate a hand car should be required to give some notice of its approach, where a view of the track is obscured; but, this obligation not being within the class of duties which are enjoined upon the master, when a railroad company has adopted and promulgated rules for the protection of its employees under such circumstances, any failure to comply therewith is the negligence of a fellow servant—a risk which the employee assumes when he enters upon the service.

Under the rule that the master must exercise reasonable care to furnish a safe place in which the servant performs his labor, the employees who operate trains are entitled to notice by the master of any defect in the roadbed or track which could be discovered by reasonable diligence, but this rule cannot be invoked with like reason in favor of an employee who works on the track, for to give it that effect would tend to render it unnecessary for him to exercise any vigilance to discover the approach of trains; and hence, in our judgment, so far as the plaintiff is concerned, the defendant was not neg-

ligent in failing to set out a danger signal towards Sheridan, as a warning to the men who operated the hand car. We are led to this conclusion for the following reasons : (1) The track was not dangerous. The condition of the place in which the service is to be performed, which renders it dangerous, must be some defect in the soil itself, or in a structure which rests thereon, or is in some manner attached thereto. (2) Plaintiff was aware of the danger. He knew that a hand car would pass over the road, coming from Sheridan, at about the time it arrived,—but the reason he assigns for not perceiving it is that the car came up behind him while his attention was engrossed in the work upon which he was engaged, and the noise made by the use of the tamping bars and other tools in surfacing the track so overcame the sound made by the car that he did not see or hear it in time to avoid the accident,—which must render the excuse unavailing. (3) Plaintiff assumed the risk which caused the injury. While he had been in defendant's employ but a few days, he was nevertheless an experienced section man, accustomed to the work, and conscious of the dangers to which he was constantly exposed ; and these risks he voluntarily assumed when he entered the service. One of the hazards to which he was necessarily subjected, and which his employment and service signify he was willing to bear, was the negligence of his fellow servants: 2 Thompson, Neg. p. 969 ; *Miller* v. *Southern Pac. Co.*, 20 Or. 285 (26 Pac. 70) ; *Stockmeyer* v. *Reed*, 55 Fed. 259 ; *Lindvall* v. *Woods*, 41 Minn. 212 (42 N. W. 1020, 4 L. R. A. 793) ; *Crispin* v. *Babbitt*, 81 N. Y. 516 (37 Am. Rep. 521) ; *Slater* v. *Jewett*, 85 N. Y. 61 (39 Am. Rep. 627) ; *Hussey* v. *Coger*, 112 N. Y. 614 (3 L. R. A. 559, 8 Am. St. Rep. 787, 20 N. E. 556) ; *Dube* v. *City of Lewiston*, 83 Me. 211 (22 Atl. 112).

Judge Thompson, in his work on Negligence (Vol. 2, p. 1026), in defining the term "fellow servant," says "that all who serve the same master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow servants, who take the risk of each other's negligence." Under this definition, plaintiff and the men operating the hand car, as well as the overseer in charge of the surfacing gang, who tried to give warning of the approach of the car, but was unheard by plaintiff, were fellow servants ; and this is also true when tested by the rule adopted by this court, that the character of the act, rather than the grade of the offending employee, determines such relation : *Anderson* v. *Bennett*, 16 Or. 515 (19 Pac. 765); *Hartvig* v. *North Pacific Lumber Co.*, 19 Or. 522 (25 Pac. 358); *Miller* v. *Southern Pacific Co.*, 20 Or. 285 (26 Pac. 70); *Carlson* v. *Oregon Short Line Ry. Co.*, 21 Or. 450 (28 Pac. 497) ; *Fisher* v. *Oregon Short Line Ry. Co.*, 22 Or. 533 (30 Pac. 425, 16 L. R. A. 519; *Mast* v. *Kern*, 34 Or. 247 (54 Pac. 950).

Plaintiff's failure to exercise watchfulness, combined with the negligence of his fellow servants, produced his injury ; and, these being causes for which the defendant was not responsible, it follows that the judgment is reversed, and the cause remanded for such further proceedings as may be necessary, not inconsistent with this opinion.

REVERSED.